IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

VERA TOWNSEND on behalf of        )
D.D.C., a minor,                  )
                                  )
        Plaintiff,                )
                                  )        No. 2:18-cv-2213-TMP
v.                                )
                                  )
ANDREW SAUL,                      )
COMMISSIONER OF SOCIAL            )
SECURITY,                         )
                                  )
        Defendant.                )

_____

ORDER AFFIRMING THE COMMISSIONER'S DECISION
_____

On March 28, 2018, Vera Townsend, on behalf of D.D.C., a minor, filed a *pro se* Complaint for Judicial Review of Social Security Decision.[1] (ECF No. 1.) Townsend is D.D.C's sister and appeared on her minor sibling's behalf at a hearing before an Administrative Law Judge ("ALJ") on May 1, 2017.[2] (ECF No. 1-1 at 2-3.) The undersigned previously determined that Townsend is a proper party to bring this suit, as she is well situated to represent D.D.C.'s rights in this matter. (ECF No. 6 at 4.)

_____

[1]After the parties consented to the jurisdiction of a United States magistrate judge on December 19, 2019, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 19.)

[2]At the administrative stage, a minor may be represented by a person who is not an attorney.  See 20 C.F.R. § 416.1505(b).

Townsend now seeks to appeal from a final decision of the Commissioner of Social Security ("Commissioner") determining that D.D.C. no longer qualified for supplemental security income under Title XVI of the Social Security Act ("the Act") because D.D.C.'s disability had ended under section 1614(a)(3)(C) of the Act. For the following reasons, the ALJ's decision is AFFIRMED.

## I. FINDINGS OF FACT

On June 17, 2009, Townsend submitted on behalf of D.D.C. an application for children's supplemental security income (SSI) under Title XVI of the Social Security Act.[3] (R. at 108.) In a determination by the Social Security Administration ("SSA") dated August 12, 2009, D.D.C. was awarded SSI benefits based on diagnoses of a conduct disorder and attention deficit hyperactivity disorder (ADHD) as of May 28, 2009. (R. at 51.) The determination indicated that D.D.C.'s diagnosed impairments met the listings for personality and impulse-control disorders at 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.08. (R. at 51.)

On February 2, 2015, the SSA notified Townsend that D.D.C.'s SSI benefits would cease as of February 2015 because D.D.C. no longer met the disability requirements. (R. at 52.) On February 9, 2015, Townsend submitted a request for reconsideration. (R. at 59.)

---

[3]The record appears to list May 28, 2009 as both the filing date and the date that D.D.C.'s disability began. (R. at 51.) The Application Summary for Supplemental Security Income, however, lists the application date as June 17, 2009. (R. at 108)

On August 13, 2015, an SSA disability hearing officer reviewed and upheld the cessation determination, affirming the February 2015 date of cessation. (R. at 63, 65–72.) Townsend then requested a hearing with an ALJ, which took place on May 1, 2017. (R. at 34–50.) After considering the record and the testimony given at the hearing, the ALJ concluded that D.D.C. was not disabled as of February 2015. (R. at 9.)

To reach this conclusion, the ALJ used the three-step evaluation process for determining if a minor claimant continues to be disabled. See 20 C.F.R. § 416.994a(b). At the first step, the ALJ must determine whether medical improvement has occurred in the impairments the claimant had at the time of the most recent medical determination of disability, also known as the comparison point decision ("CPD"). Id. at § 416.994a(b)(1). At this step, the ALJ in this case noted that D.D.C.'s most recent favorable medical decision, the CPD, occurred on August 12, 2009. (R. at 12.) At the time of the CPD, it was determined that D.D.C. had attention deficit hyperactivity disorder and a conduct disorder, impairments that met the listing for child personality and impulse disorders in 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.08. (R. at 12.) Based on his review of subsequent medical reports, the ALJ found that medical improvement occurred as of February 1, 2015. (R. at 13.)

Accordingly, the ALJ moved to step two of the analysis, which requires a determination of whether the claimant's impairments meet

or medically or functionally equal the severity of the listing previously satisfied at the time of the CPD. See 20 C.F.R. § 416.994a(a)(1). If so, the claimant is still disabled. Id. If not, the ALJ considers whether the current impairments qualify as disabling. Id. Here, the ALJ determined that as of February 1, 2015, D.D.C.'s impairments did not meet or medically or functionally equal the listing they satisfied at the time of the CPD. (R. at 13.)

Accordingly, the ALJ moved to step three of the analysis, which requires a determination of whether the claimant is disabled as of the date of hearing, considering all impairments the claimant has at that time and those the claimant had but were not considered at the time of the CPD. See 20 C.F.R. § 416.994a(b)(3). In this case, the ALJ found that the medical and other evidence established that D.D.C. did not have impairments that were overlooked at the time of the CPD, and D.D.C had not developed any additional impairments since the CPD. (R. at 25.) Moreover, the ALJ determined that as of February 1, 2015, D.D.C. had not had an impairment or combination of impairments that met or medically or functionally equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 25.) The ALJ concluded that D.D.C.'s disability ended as of February 1, 2015, and D.D.C. had not become disabled again since that time. (R. at 25.)

On July 18, 2017, the ALJ issued a decision detailing the

findings summarized above. (R. at 9.) On March 7, 2018, the SSA Appeals Council denied Townsend's request for review. (R. at 1.) Townsend now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. Townsend argues that "in making this decision the ALJ committed an error of law." (ECF. No. 15 at 1.) Townsend attached to her brief statements from D.D.C.'s school, including statements by teachers supporting his ADHD and conduct disorder impairments. (Id.) Townsend also included a medical record from a June 13, 2019 visit to Dr. Zakiya Woods, who began treating D.D.C. in February 2019. (Id. at 2.) According to Townsend, Dr. Woods "stated to [Townsend] that she believes [D.D.C.] is Bipolar as well, because of his crying outburst, moods and anger." (Id.) Townsend asserts that the ALJ did not adequately consider the statements on file regarding D.D.C.'s condition. (Id.) Townsend contends that the record demonstrates that D.D.C.'s condition has actually worsened since February 2009.(Id.)

## II.  CONCLUSIONS OF LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try

the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d 709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 528 (6th Cir. 1997); <u>Crum v. Sullivan</u>, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    The Three-Step Analysis**

Section 1382c(a)(3)(C)(i) of the Social Security Act states that:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. <u>Lowery v. Comm'r, Soc. Sec. Admin.</u>, 55 F. App'x 333, 341 (6th Cir. 2003). Once a minor establishes eligibility for disability benefits, "[t]here is a statutory requirement that . . . continued eligibility for such benefits must be reviewed periodically." 20 C.F.R. § 416.994a(a). A child's entitlement to continuing social security benefits is

determined by a three-step sequential analysis set out in the Social Security Regulations. See 20 C.F.R. § 416.994a(b).

At the first step, the ALJ must determine whether medical improvement has occurred in the impairments the claimant had at the time of the CPD. 20 C.F.R. § 416.994a(b)(1). "Medical improvement" is defined in 20 C.F.R. § 416.994a(c) as follows:

> Medical improvement is any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable decision that [a claimant was] disabled or continued to be disabled. Although the decrease in severity may be of any quantity or degree, [the SSA] will disregard minor changes in [a claimant's] signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that [a claimant's] disability has ended. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s).

Generally, if there has been no medical improvement, the claimant's disability continues. 20 C.F.R. § 416.994a(b)(1). If there has been medical improvement, however, the ALJ moves to step two. Id.

Step two of the analysis requires a determination of whether the claimant's impairments still meet or medically or functionally equal the severity of the listing previously satisfied at the time of the CPD. 20 C.F.R. § 416.994a(b)(2). If so, the claimant is still disabled unless some exception applies. Id. If the impairment does not still meet or equal the severity of the prior listing, the ALJ moves to step three. Id.

Step three of the analysis requires a determination of whether the claimant is disabled as of the date of hearing, considering all impairments the claimant has at that time and those the claimant had but were not considered at the time of the CPD. 20 C.F.R. § 416.994a(b)(3). When assessing whether a minor is currently disabled, the ALJ must first determine whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 416.994a(b)(3)(i). If the impairment is not severe, the claimant's disability has ended. Id. If it is severe, on the other hand, the ALJ must then determine whether the impairment meets, medically equals, or functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.994a(b)(3)(ii)–(iii). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. Id. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must find that the child is not disabled. Id.

A child's impairment is "functionally equal" to a listed impairment "if the child has an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning." Miller _ex rel._ Devine v. Comm'r of Soc. Sec., 37 F. App'x 146, 148 (6th Cir. 2002); 20 C.F.R. § 416.926a(a). A child's functional equivalency is assessed in terms of six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

The terms "marked" and "extreme" limitation are defined by regulation. A marked limitation is one that "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Such limitations are "the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." Id. An extreme limitation is one that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Extreme limitation "does not necessarily mean a total lack or loss of ability to function." Id. Rather, extreme limitation is "the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id.

## C. Whether New Evidence Related to D.D.C.'s Mental Condition Justifies Remand to the Commissioner

On appeal, Townsend argues that the ALJ reached the wrong decision, and she attaches new medical records and teacher statements to support her claim. However, judicial review of an ALJ's decision entails "the deferential substantial-evidence

standard." Cardew, 896 F.3d at 745. Thus, so long as the ALJ's decision is supported by substantial evidence, "the court should defer 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" Id. at 745-46 (quoting Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009)). While Townsend asserts that the ALJ erred, she does not argue the ALJ applied the incorrect legal standard or reached a decision lacking the support of substantial evidence. Rather, Townsend presents new evidence she claims is contrary to the ALJ's determinations regarding D.D.C.'s impairments. The court, however, is "simply . . . not in the position to consider new evidence in 'deciding whether to uphold, modify, or reverse the ALJ's decision.'" Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 839 (6th Cir. 2016) (quoting Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996)). Yet, in limited circumstances, new evidence may justify remand under 42 U.S.C. § 405(g).

Courts may remand a case to an ALJ for review of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). As the language of the statute indicates, this places the burden of production upon the claimant. See Miller, 811 F.3d at 839 (citing 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)). "For the purposes of a 42 U.S.C. §

405 (g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" <u>Foster</u>, 279 F.3d at 357 (quoting <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 626 (1990)). "The fact of a subsequent favorable assessment is not itself new and material evidence under § 405(g); only the medical evidence that supported the favorable assessment can establish a claimant's right to a remand." <u>Deloge v. Comm'r of Soc. Sec. Admin.</u>, 540 F. App'x 517, 519 (6th Cir. 2013) (citing <u>Allen v. Comm'r of Soc. Sec.</u>, 561 F.3d 646, 653 (6th Cir. 2009)). "'If a subsequent favorable decision—separated from any new substantive evidence supporting the decision—could itself be 'new evidence' under [§ 405(g)], the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence.'" <u>Id.</u> (quoting <u>Allen</u>, 561 F.3d at 653). "Turning to materiality, plaintiff's additional evidence (1) must be relevant and probative of her condition prior to the administrative law judge's decision, and (2) must establish a reasonable probability that the administrative law judge would have reached a different decision if he had considered the evidence." <u>Brooks v. Colvin</u>, No. 2:12-cv-434, 2013 U.S. Dist. LEXIS 52370, 2013 WL 1500201, at *10 (S.D. Ohio Apr. 11, 2013) (citing <u>Sizemore v. Sec'y of Health & Human Servs.</u>, 865 F.2d 709, 711 (6th Cir. 1988); <u>Hollon v. Comm'r of Soc. Sec.</u>, 447 F.3d 477, 488 (6th Cir. 2006)).

Regardless of whether the additional medical evidence provided by Townsend qualifies as "new" within the meaning of § 405 (g), it is not "material." The sole medical record provided regarding D.D.C.'s condition is from a visit to Dr. Zakiya Woods on June 13, 2019. (ECF No. 15-1 at 7.) The assessment of the minor by Dr. Woods at this visit included ADHD and a behavior problem. (Id.) According to Townsend, Dr. Woods "stated to [Townsend] that she believes [D.D.C.] is Bipolar as well, because of his crying outburst, moods and anger." (ECF No. 15, at 2.) Yet, nothing in the actual medical record reflects any such opinion by Dr. Woods. (ECF No. 15-1 at 7.) The medical record states that D.D.C. received multiple suspensions from school for fighting with his teachers. (Id.) The record also notes that D.D.C. lost his job because of his anger. (Id.) Lastly, the record contains reports that D.D.C. "laughs inappropriately and has crying spells." (Id.) This evidence is not material, however, because none of it is "probative of [the minor's] condition prior to the administrative law judge's decision." See Brooks, 2013 WL 1500201, at *10. The medical record details a single visit to Dr. Woods on June 13, 2019, long after the ALJ's July 18, 2017 decision. (ECF No. 15-1 at 7.) Moreover, Dr. Woods did not begin seeing D.D.C. until February of 2019, and nothing in the record indicates the assessment was retrospective in nature. (Id.) The medical record provided pertains only to D.D.C.'s condition in June of 2019, and thus it lends little support to Townsend's contention

that D.D.C.'s condition declined from February 2009 until the time of the ALJ's decision in July 2017 and through June 2019.

Even if the medical record did demonstrate that the minor's condition was progressively deteriorating, "it would nevertheless have been an insufficient reason for remanding this claim." See Sizemore, 865 F.2d at 712. "Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began." Id. "Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition." Deloge, 540 F. App'x at 519 (quoting Sizemore, 865 F.2d at 712). "If in fact the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment." Id. at 519-20 (quoting Sizemore, 865 F.2d at 712). Accordingly, the circumstances of the instant case do not justify remand.[4]

---

[4]Townsend also provided log entries of disciplinary action from D.D.C.'s school and a statement by his former employer. Most of these documents relate to events outside the relevant timeframe and accordingly lack materiality. See Brooks, 2013 WL 1500201, at *10. To the extent that the academic records provide additional entries of discipline during the relevant timeframe, such evidence also lacks materiality because Townsend cannot establish "a reasonable probability" that it would have altered the ALJ's decision. Id. Accordingly, these documents do not justify remand either.

-14-

**D.  Whether the ALJ's Decision was Supported by Substantial Evidence**

While Townsend does not explicitly reference the substantial evidence standard, she argues that the ALJ did not appropriately consider statements on file regarding D.D.C.'s condition. (ECF No. 15, at 2.) The government construes Townsend's argument as challenging whether there was substantial evidence to support the ALJ's determinations that D.D.C.'s impairments did not meet or medically or functionally equal the severity of a listing. (ECF No. 18, at 6-8.) Upon review of the record, this court finds there is substantial evidence to support the ALJ's determinations.

1.  <u>Listing & Medical Equivalence</u>

The ALJ correctly found that D.D.C. no longer met the listing for child personality and impulse disorders. <u>See</u> 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.08. The relevant listing consists of Paragraphs A and B, both of which a claimant must satisfy to be deemed disabled. <u>Id.</u> Paragraph A of the listing, which includes the medical criteria that must be present in a claimant's medical evidence, states as follows:

> Symptoms and signs may include, but are not limited to, patterns of distrust, suspiciousness, and odd beliefs; social detachment, discomfort, or avoidance; hypersensitivity to negative evaluation; an excessive need to be taken care of; difficulty making independent decisions; a preoccupation with orderliness, perfectionism, and control; and inappropriate, intense, impulsive anger and behavioral expression grossly out of proportion to any external provocation or psychosocial stressors.

Id. at § 112.08A. Paragraph B of the listing, on the other hand, provides the functional criteria for evaluating how a claimant's mental disorder limits his or her functioning. Id. at § 112.08B. To satisfy Paragraph B, a claimant's impairments must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning, which are defined as follows: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id.

In this case, the ALJ determined that, as of February 1, 2015, the impairments D.D.C. had at the time of the CPD did not meet or medically equal the listing they had previously satisfied. (R. at 13.) Specifically, the ALJ determined that the claimant's CPD impairments, which previously resulted in marked restrictions in D.D.C.'s social functioning and ability to concentrate, no longer imposed marked limitations in social functioning as required by the listing. (Id.) As a result, D.D.C. had marked limitations in only one area under Paragraph B. (Id.) Accordingly, because of the improvement in D.D.C.'s abilities in social functioning, the ALJ found that D.D.C. no longer satisfied the listing. (Id.) Before reaching this decision, the ALJ heard testimony from Townsend and D.D.C.'s mother regarding the impact of his impairments. (R. at 14.) This testimony detailed D.D.C.'s troubles in school, which had

resulted in him failing both fifth and sixth grade. (Id.) According to the ALJ's opinion, "Townsend also indicated that the claimant was unable to use public transportation, accept criticism or correction, keep out of trouble, obey rules, avoid accidents or ask for help when needed[.]" (R. at 14, 156.) However, the ALJ found that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely consistent with the objective medical and other evidence[.]" (R. at 14.)

The ALJ ultimately found that the medical opinions regarding D.D.C.'s impairments indicated a less than marked limitation in the claimant's social abilities. (R. at 20.) For example, the ALJ noted that consultative examiner Dr. Heather Gammel provided an expert opinion, in which she stated that D.D.C. did not have any signs of oppositional defiance. (R. at 20, 351, 354.) Dr. Gammel also stated that D.D.C. was well behaved during testing, opining that his condition was consistent with mild attention problems. (R. at 20, 353-54.) According to Dr. Gammel's opinion, D.D.C. had no more than a mild impairment in his social abilities as a result of the impairments present at the CPD. (R. at 353-54.) State medical consultants Dr. Calway-Fagen and Dr. Neilson gave similar opinions as to the claimant's limitations in this regard. (R. at 346, 362.)

The ALJ also acknowledged statements by the claimant's mother and sister regarding the claimant's difficulty getting along with

others. (R. at 20.) The ALJ also noted that one of the claimant's teachers had continuing disagreements with the claimant. (R. at 21.) The claimant's teacher indicated that the claimant had a serious problem in respecting and obeying adults in authority, and he had some problems in playing cooperatively with other children, asking permission appropriately and following rules. (R. at 21, 194.) The teacher noted that the claimant was on a behavior plan. (R. at 21, 193.) The ALJ considered the teacher's opinion and noted some discrepancies between the opinion and the report cards concerning the claimant's conduct. (R. at 21.) The ALJ determined that the claimant had a less than marked impairment in social functioning as of February 1, 2015. (R. at 13.) This determination was supported by substantial evidence.

2.   Functional Equivalence

The ALJ also analyzed functional equivalence, determining that the claimant's impairments did not functionally equal any listing. (R. at 13-25.) This determination was supported by substantial evidence. A child's impairment is "functionally equal" to a listed impairment "if the child has an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning." Miller ex rel. Devine v. Comm'r of Soc. Sec., 37 F. App'x 146, 148 (6th Cir. 2002); 20 C.F.R. § 416.926a(a). A child's functional equivalency is assessed in terms of six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3)

-18-

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

### a. Acquiring and using information

The first domain is acquiring and using information. In this domain, the SSA considers how well a claimant acquires or learns information, and how well a claimant uses the information he has learned. 20 C.F.R. § 416.926a(g). The regulations provide that an adolescent (i.e., a child age 12 to attainment of age 18) should be able to demonstrate what he has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). 20 CFR 416.926a(g)(2)(v). The adolescent should be able to use what he has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). Id. He should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). Id. He should also learn to apply these skills in practical ways that will help him enter the workplace after finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer). Id.

In this case, the ALJ determined that as of February 1, 2015, the claimant had a less than marked limitation in acquiring and

using information as a result of the impairments present at the CPD. (R. at 15.) In reaching this conclusion, the ALJ considered the claimant's academic records and records from several medical examinations. (R. at 16-17.) The ALJ noted some fluctuations in the claimant's academic performance, including report cards demonstrating that D.D.C. struggled to obtain passing grades. (R. at 16.) However, the ALJ noted a correlation between D.D.C.'s lack of attendance and his poor grades. (R. at 16-17, 217-19.) The ALJ noted that D.D.C. fared much better in school with prescribed medication and consistent attendance, achieving mostly passing grades. (Id.) The ALJ also considered statements by a teacher suggesting that D.D.C. had only some problems with reading and comprehension and minimal problems in other areas. (R. at 16, 191.) The ALJ gave little weight to contradictory testimony by Townsend regarding limitations in all aspects of understanding and using information. (R. at 16, 162.)

The ALJ also considered medical opinions as to the minor's condition. (R. at 16-17.) Dr. Heather Gammel consultatively examined the claimant in June 2015, at which time the claimant achieved a full-scale IQ score of 80, indicative of only a mild impairment. (R. at 16, 353-56). Dr. Gammel opined that the claimant had mild limitations in this domain of functioning. (R. at 355.) The ALJ afforded Dr. Gammel's opinion great weight in this regard. (R. at 16.) The ALJ also considered the opinion of state agency

-20-

medical consultant Dr. Norma Calway-Fagen who opined that the claimant had a less than marked limitation in this domain of functioning. (R. at 16, 359.) The ALJ gave Dr. Calway-Fagen's opinion significant weight. (R. at 16-17.)

The ALJ also considered the opinion of state agency medical consultant Dr. Thomas Neilson who opined that the claimant had no limitation in this area of functioning. (R. at 17, 346.) The ALJ gave this opinion no weight because the record established that the claimant did have some limitation in this domain of functioning, such as in reading and comprehending written material. (R. at 17.) Based on his consideration of the above evidence, the ALJ concluded that the claimant had a less than marked limitation in this area of functioning. The ALJ's determination in this regard is supported by substantial evidence.

### b. Attending and completing tasks

The second domain is attending and completing tasks. In this domain, the SSA "consider[s] how well [a claimant is] able to focus and maintain [the claimant's] attention, and how well [the claimant] begin[s], carr[ies] through, and finish[es] [the claimant's] activities, including the pace at which [the claimant] perform[s] activities and the ease with which [the claimant] change[s] them." 20 C.F.R. § 416.926a(h). In this case, the ALJ determined that D.D.C. had a marked limitation in the domain of attending and completing tasks. (R. at 18.) The ALJ largely based

this determination on the school records of D.D.C.'s academic performance, according to which the minor had been placed under a service plan due to problems with concentration. (R. at 18-19, 262.) While the government argues that the minor's medical records demonstrate improvement in his symptoms with medication, the ALJ's determination regarding this domain of functioning is supported by substantial evidence.

### c.   Interacting and relating with others

The third domain of functioning is interacting and relating with others. In this domain, the SSA "consider[s] how well [a claimant] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [the claimant's] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). In this case, the ALJ determined that the claimant had a less than marked impairment in interacting and relating with others. (R. at 20-21.) Much of the evidence supporting this finding is discussed above in relation to the ALJ's determination that D.D.C. had a less than marked limitation in social functioning for purposes of medical equivalence. Again, the ALJ ultimately determined that the medical opinions regarding D.D.C.'s impairments indicated that the resulting limitation in D.D.C.'s social abilities was less than marked. (R. at 20.) The ALJ relied on opinions by Dr. Gammel, Dr.

Calway-Fagen, and Dr. Neilson in reaching this conclusion. (R. at 20-21, 346, 353, 362.)

The ALJ also acknowledged statements by the claimant's mother and sister regarding the claimant's difficulty getting along with others. (R. at 20.) The ALJ also noted that D.D.C.'s school had previously suspended him and "requested a conference regarding the claimant's violating rules and following instructions." (R. at 20, 218, 246.) The ALJ also noted that records from Alliance Healthcare Services show that in March 2015, the claimant's mother stated that the claimant took his medication Monday through Friday. (R. at 21.) The claimant's mother said she was satisfied with the control of D.D.C.'s symptoms based on feedback from the majority of his teachers. (Id.) However, one teacher continued to complain about the claimant's disruptive behavior early in the day. (R. at 20-21.) In December 2015, the claimant's mother reported that the claimant's dosage of medicine was effective and that the claimant was well behaved at school. (R. at 21.)

The ALJ noted that one of the claimant's teachers had continuing disagreements with the claimant. (Id.) The claimant's teacher indicated that the claimant had a serious problem in respecting and obeying adults in authority, and he had some problems in playing cooperatively with other children, asking permission appropriately, and following rules. (R. at 21, 193.) The teacher noted that the claimant was on a behavior plan. (R. at 21.)

The ALJ considered the teacher's opinion and noted some discrepancies between the opinion and the report cards concerning the claimant's conduct. (Id.) Ultimately, the ALJ determined that the claimant had a less than marked impairment in interacting and relating with others. (Id.) The ALJ's determination in this regard is supported by substantial evidence.

> d.   Moving about and manipulating objects

The fourth domain of functioning is moving about and manipulating objects. In this domain, the SSA "consider[s] how [a claimant] move[s] [the claimant's] body from one place to another and how [the claimant] move[s] and manipulate[s] things." 20 C.F.R. § 416.926a(j). This is an analysis of "gross and fine motor skills." Id. The ALJ found that the claimant did not have an impairment affecting his ability to engage in activities in this domain. (R. at 22.) State agency consultants Dr. Calway-Fagen and Dr. Neilson opined that the claimant had no limitation in this domain of functioning. (R. at 348, 361.) The ALJ considered these medical opinions in reaching his conclusion. (R. at 22.) It does not appear that Townsend seeks to challenge the ALJ's determination pertaining to this domain. To the extent that Townsend seeks to do so, the ALJ's decision regarding this domain of functioning is supported by substantial evidence.

> e.   Caring for oneself

The fifth domain is caring for oneself. In this domain, the

SSA "consider[s] how well [a claimant] maintain[s] a healthy emotional and physical state, including how well [a claimant can] get [the claimant's] physical and emotional wants and needs met in appropriate ways; how [the claimant can] cope with stress and changes in your environment; and whether [the claimant can] take care of [the claimant's] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). In this case, the ALJ found that the claimant did not have an impairment affecting his ability to engage in activities in this domain. (R. at 23.) The claimant's mother and sister indicated that D.D.C. awoke independently, tended to his own hygiene, and got ready for school on his own. (R. at 350.) Moreover, state agency consultants Dr. Calway-Fagen and Dr. Neilson opined that the claimant had less than marked limitations in this domain of functioning. (R. at 348, 361.) The ALJ considered these medical opinions in reaching his conclusion. (R. at 23.) Again, it does not appear that Townsend seeks to challenge the ALJ's determination pertaining to this domain. To the extent that Townsend seeks to do so, the ALJ's decision regarding this domain of functioning is supported by substantial evidence.

f.   Health and physical well-being

The sixth domain is health and physical well-being, a catch-all category for the "cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that [the SSA] did not consider in paragraph (j)

of this section [the domain of moving about and manipulating objects]." 20 C.F.R. § 416.926a(l). A child functioning with some degree of limitation in this area may: "[have] generalized symptoms caused by an impairment(s) (for example, tiredness due to depression);" "[have] somatic complaints related to an impairment(s) (for example, epilepsy);" "[have] chronic medication side effects (for example, dizziness);" "[n]eed[] frequent treatment or therapy (for example, multiple surgeries or chemotherapy);" "[e]xperience[] periodic exacerbations (for example, pain crises in sickle cell anemia);" or "[n]eed[] intensive medical care as a result of being medically fragile." SSR 09-8P, 2009 WL 396030. In this case, the ALJ found that the claimant did not have any limitation in health and physical well-being as a result of his impairments. (R. at 24.) The ALJ noted that the claimant did not identify any side effects from his medications, and the claimant's absences from school had not been linked to doctor appointments or treatment. (R. at 24.) The ALJ considered the medical opinion of Dr. Calway-Fagen in reaching his conclusion and gave it significant weight. (R. at 24.)

The ALJ also noted that the record contained an opinion by Dr. Nicole Sheffield that the claimant had marked limitations in all domains of functioning. (R. at 24, 413.) The ALJ gave little weight to Dr. Sheffield's opinion, with the exception of the marked limitation in attending and completing tasks. (R. at 24.) The

opinion is undated, but it was attached to a facsimile transmittal sheet dated May 24, 2017. (R. at 413.) Dr. Sheffield stated that her opinion was based upon medical evidence predating the opinion by almost four years, which also predated the cessation date by almost 18 months. (R. at 24, 413.) Consequently, the ALJ concluded that Dr. Sheffield's opinion had limited relevance to the relevant time period. (R. at 24.) The ALJ determined that the only notes from Dr. Sheffield were inconsistent with her opinion, as she failed to document symptoms consistent with marked limitations. (Id.) The ALJ accordingly determined that Dr. Sheffield's opinion is inconsistent with the record as a whole. (Id.) The ALJ instead relied on the opinion of Dr. Calway-Fagen in reaching his conclusion on this portion of his opinion. (Id.) Again, it does not appear that Townsend seeks to challenge the ALJ's determination pertaining to this domain. To the extent that Townsend seeks to do so, the ALJ's decision regarding this domain of functioning is supported by substantial evidence.

The ALJ's findings that D.D.C. did not have marked limitations in two areas of functioning or extreme limitations in any area of functioning are supported by substantial evidence. Given that D.D.C. would have needed to demonstrate marked impairments in two areas of functioning or extreme limitations in one area to be considered disabled at a level functionally equivalent to the listings, the ALJ did not err in concluding that D.D.C. was not

disabled.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

<div style="margin-left: 50%;">

s/ Tu M. Pham
_____
TU M. PHAM
United States Magistrate Judge

January 22, 2020
_____
Date

</div>